**ILLINOIS CENTRAL RAILROAD COM-
PANY, a corporation, Plaintiff,**

v.

**BROTHERHOOD OF LOCOMOTIVE EN-
GINEERS, an unincorporated asso-
ciation, et al., Defendants.**

No. 68 C 1382.

United States District Court
N. D. Illinois, E. D.

Aug. 1, 1968.

Robert Mitten, John W. Foster and Lawrence Lawless, Chicago, Ill., for plaintiff.

Burke Williamson, Adams, Williamson & Turney, Chicago, Ill., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER DISPOSING OF MOTION FOR PRELIMINARY INJUNCTION

PERRY, District Judge.

This cause coming on to be heard on the plaintiff's MOTION FOR PRELIMINARY INJUNCTION; and

It appearing that on July 24, 1968, the plaintiff filed its COMPLAINT FOR INJUNCTION and that such case was assigned to the Honorable Edwin A. Robson, Judge of this Court; and

It further appearing that on the same day, July 24, 1968, the plaintiff filed its EMERGENCY MOTION PURSUANT TO VERIFIED COMPLAINT FOR A TEMPORARY RESTRAINING ORDER AND TO SET FOR HEARING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, and that said motion was presented to the Honorable Joseph Samuel Perry, Judge of said Court, then sitting as emergency judge for said Court; and that at such hearing an attorney appeared to represent all the defendants in said suit; and

It further appearing that on July 24, 1968, the parties, through their attorneys, agreed that the plaintiff's protested training and the defendants' scheduled strike would be postponed pending determination by the Court of the plaintiff's motion for a temporary restraining order, and that the hearing was thereupon continued to July 25, 1968; and

It further appearing that on July 25, 1968, the Court heard further from the parties and at the conclusion of the hearing suggested that the parties proceed to a hearing on a preliminary injunction so that, if either party wishes, it may take an appeal, to which the parties agreed, and that the plaintiff's motion for a temporary restraining order was continued to July 29, 1968, on agreement by the parties, through their attorneys, that the plaintiff's protested training and the defendants' scheduled strike would be postponed pending determination by the Court of the plaintiff's motion for a preliminary injunction; and

It further appearing that on July 29, 1968, the plaintiff filed its MOTION FOR PRELIMINARY INJUNCTION, and that hearings were had on said motion on July 29 and 30, 1968, and on August 1, 1968, at which the Court heard the testimony of witnesses of both parties and received in evidence written material offered by them; and

It further appearing that the Court has considered the pleadings and the briefs filed by the attorneys for the parties, and has heard oral arguments of the attorneys for the parties;

The Court makes its FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER DISPOSING OF MOTION FOR PRELIMINARY INJUNCTION, as follows:

### FINDINGS OF FACT

1. The plaintiff is a common carrier engaged in interstate commerce by railroad and is a "carrier" within the meaning of that term as defined in the Railway Labor Act (45 U.S.C. § 151) and is subject to the provisions of that Act and of the Interstate Commerce Act.

2. The defendant BROTHERHOOD OF LOCOMOTIVE ENGINEERS, an unincorporated association, is a labor organization, national in scope, with headquarters in Cleveland, Ohio, which is the representative, under the Railway Labor Act, of the craft or class of locomotive engineer employees of the plaintiff.

3. The individual defendants are officers of the Brotherhood or employees of the plaintiff in the craft or class of locomotive engineers.

4. The defendant Brotherhood as the representative of the craft or class of locomotive engineers and the plaintiff have entered into a collective bargaining agreement concerning rates of pay, rules, and working conditions, as required by the Railway Labor Act, under which locomotive engineers work for the plaintiff. This collective bargaining agreement does not contain a "scope rule," that is, specific provisions describing exactly what work the craft or class of locomotive engineers is to perform. Historically, many collective bargaining agreements of the operating crafts of railway employees lack such a "scope rule." As early as 1923 the plaintiff recognized in writing the right of engineers to "man" its engines. In 1944 the plaintiff and the defendant Brotherhood entered into a written agreement, which is still in effect on the plaintiff's railroad, which provided that "the existing duties and responsibilities of engineers will not be assigned to others."

5. At all times prior to late April or early May, 1968, the plaintiff did not request or require its locomotive engineers to relinquish the controls of the locomotive in their charge to the plaintiff's Travelling Engineers or other management personnel for the purpose of permitting such management personnel to train the plaintiff's administrative or supervisory personnel to operate the plaintiff's locomotives.

6. In April, 1968 the plaintiff stated to the defendant Brotherhood that the plaintiff was considering inauguration of a Strike Program intended to train its administrative or supervisory personnel so as to maintain partial operation of the railroad in the event of a strike by its trainmen employees represented by the Brotherhood of Railroad Trainmen, but that details of the Strike Program had not been worked out. The defendant Brotherhood replied that if the contemplated Strike Program affected the duties and responsibilities of locomotive engineers in the operation of locomotives in their charge the defendant Brotherhood would object and would take such action as it deemed appropriate.

7. In late April or early May, 1968, the defendant Brotherhood learned that the plaintiff had inaugurated its Strike Program and was requesting and requiring its locomotive engineers to relinquish the controls of the locomotive in their charge to the Travelling Engineers or other management personnel of the plaintiff for the purpose of training the plaintiff's administrative or supervisory personnel to operate the plaintiff's locomotives. As part of this Strike Program the plaintiff's Travelling Engineers or other management personnel stated to the locomotive engineer in charge of the locomotive that he should turn over the throttle of the locomotive to such management personnel or to the trainee, that the locomotive engineer was relieved from responsibility for the locomotive, that the locomotive engineer should place himself elsewhere in the locomotive or, in some instances, in a following diesel locomotive unit, but that if the locomotive engineer left the engine and returned to his home he would be discharged. Locomotive engineers who were thus requested or required to relinquish the controls of the locomotive in their charge were paid as though they had performed their duties and responsibilities as locomotive engineers.

8. The defendant Brotherhood protested against this action of the plaintiff in requesting or requiring the locomotive engineers to relinquish the controls of the locomotive in their charge and from the action of the carrier in relieving them of their duties and responsibilities, but the plaintiff denied the protest.

9. After obtaining authorization pursuant to the rules of the Brotherhood of Locomotive Engineers, the defendant Brotherhood served on the plaintiff a

notice dated June 3, 1968, the first paragraph of which was as follows:

"This will serve as a formal notice under Section 6 of the Railway Labor Act of the desire of employees represented by the Brotherhood of Locomotive Engineers to revise and supplement existing agreements in accordance with proposal attached hereto, identified as Attachment 'A'."

Attachment "A", to which reference was made, in general would provide that, with certain exceptions not here material, locomotive engineers would not be requested or required to relinquish the controls of the locomotive in their charge. No exception was contained for trainees such as the plaintiff's administrative or supervisory personnel.

10. Conferences were held June 28, 1968, between the plaintiff and the defendant Brotherhood on the Section 6 notice dated June 3, 1968, as required by the Railway Labor Act, but no agreement was reached and negotiations were terminated, not later than July 5, 1968.

11. During June and July, 1968 the plaintiff continued its above-described Strike Program and required its locomotive engineers to relinquish the controls of locomotives in their charge to the above-described trainees of the plaintiff. Neither the plaintiff nor the defendants requested the assistance of the National Mediation Board.

12. The defendant Brotherhood in July, 1968, obtained authority, pursuant to its rules, to call a strike against the plaintiff on account of the dispute arising from the said Section 6 notice of June 3, 1968. On July 22, 1968, the Grand Chief Engineer of the defendant Brotherhood notified the National Mediation Board, Washington, D. C., by telephone and by telegram, that the engineers in the service of the plaintiff had scheduled a peaceful withdrawal from service for 12:01 A.M. July 23, 1968.

13. The National Mediation Board at once proffered its services pursuant to Section 5 of the Railway Labor Act, requested the parties to maintain the status quo while the dispute was investigated, docketed the case as N M B Case E–342, and requested the defendant Brotherhood to defer strike action pending the Board's efforts to resolve the dispute. The Board assigned Mediator Quinn, who was already on the plaintiff's property, to handle the case.

14. The plaintiff accepted the offer of mediation and, on July 22, 1968, reached this agreement with defendant Brotherhood:

"This will confirm our telephone conversation this afternoon regarding BLE notice June 3, 1968, on the manning of engines. As I told you, we will suspend the training of personnel in this connection for the next two days July 23 and 24. You assured me the BLE will postpone the strike authorized for tonight."

15. The parties met with Mediator Quinn on July 24, 1968 concerning the Section 6 notice of June 3, 1968, but no settlement was effected. Mediator Quinn is continuing his efforts.

16. The defendant Brotherhood has stated to the Court that it will postpone its scheduled strike until the National Mediation Board notifies both parties in writing that its mediatory efforts have failed, and for such further period or periods as may be required under the Railway Labor Act, provided the plaintiff does not request or require its locomotive engineers to relinquish the controls of the locomotives in their charge to the above-described trainees.

17. The defendants, by their attorneys, have admitted for the purposes only of the hearing on the plaintiff's Motion For a Preliminary Injunction, that if the craft or class of locomotive engineers of the plaintiff withdraws from the service of the plaintiff this will cause immediate and irreparable injury to the plaintiff and to others. From the evidence adduced by the plaintiff the Court so finds.

18. The parties, through their respective attorneys, have agreed that this litigation involves a labor dispute which

is a "major dispute", as that term is used in litigation under the Railway Labor Act, in that it arises from the Section 6 notice of June 3, 1968, served by the defendant Brotherhood on the plaintiff. The plaintiff takes the position that even though the dispute is a major one arising from the Section 6 notice the "status quo" provisions of the Railway Labor Act do not interfere with the plaintiff's "management prerogative" to train its administrative and supervisory personnel in the handling of locomotives unless there is a contract, agreement or rule restricting management's right to conduct such training.

19. Neither party has submitted any dispute as to the interpretation or application of the collective bargaining agreement, insofar as it may be involved herein, to the National Railroad Adjustment Board for adjudication.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and of the parties under the Constitution and laws of the United States, including the Judicial Code (28 U.S.C. § 1331 and 1337) and the Railway Labor Act (45 U.S.C. § 1 et seq). The amount involved in this controversy exceeds the sum of $10,000.00, exclusive of interest and costs.

2. The defendants have a joint and common interest with and can and do fairly and adequately represent the members of the defendant Brotherhood of Locomotive Engineers and the craft or class of locomotive engineers in the employ of the plaintiff. This is a proper class suit.

3. The defendants' Section 6 notice of June 3, 1968 is a proper subject of collective bargaining under the Railway Labor Act.

4. Inasmuch as a period of more than ten days elapsed after termination not later than July 5, 1968, of conferences between the parties with respect to the Section 6 notice of June 3, 1968, without request for or a proffer of the services of the National Mediation Board, the employees represented by the defendant Brotherhood were free to strike from and after July 15, 1968, and thereafter until the proffer of the services of the National Mediation Board.

5. The parties on July 22, 1968, accepted the proffer of the services of the National Mediation Board. The provisions of Section 5 of the Railway Labor Act (45 U.S.C. § 155) are applicable, and until the National Mediation Board shall notify both parties in writing that its mediatory efforts have failed and until other required procedures of the Railway Labor Act have been completed, no change may be made in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose.

6. When the plaintiff began in late April or early May, 1968, to request or require its locomotive engineers to relinquish the controls of the locomotives in their charge to the Travelling Engineers or other management personnel of the plaintiff for the purpose of training the plaintiff's administrative or supervisory personnel to operate the plaintiff's locomotives, the plaintiff made a change in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose, in violation of Section 5 of the Railway Labor Act (45 U.S.C. § 155).

7. Ths status quo provisions of Section 5 of the Railway Labor Act in the within major dispute limit and take precedence over whatever may be the "management prerogative" claimed by the plaintiff. The Court nevertheless concludes, should a conclusion by the Court on these points be required, that the agreements between the plaintiff and the defendant Brotherhood constituting the applicable collective bargaining agreement restrict the claimed "management prerogative" of the plaintiff to the extent that the plaintiff cannot request or require its locomotive engineers to relinquish the controls of the locomotives in their charge to the Travelling Engineers or other management personnel of

the plaintiff for the purpose of training the plaintiff's administrative or supervisory personnel to operate the plaintiff's locomotives, and that the plaintiff has violated Section 2 Seventh of the Railway Labor Act (45 U.S.C. § 152 Seventh) which provides that no carrier shall change the rates of pay, rules or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in Section 6 of the Railway Labor Act.

8. That the plaintiff and the defendants are both bound by the status quo provisions of Section 5 of the Railway Labor Act (45 U.S.C. § 155), and that until such time as the National Mediation Board has notified both parties in writing that its mediatory efforts in N M B Case E–342 have failed and until the other and further applicable periods of time provided in the Railway Labor Act have expired, no change may be made by either party in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose; that, as applicable to the plaintiff, the plaintiff during such time may not request or require its locomotive engineers to relinquish the controls of the locomotives in their charge to the Travelling Engineers or other management personnel of the plaintiff for the purpose of training the plaintiff's administrative or supervisory personnel to operate the plaintiff's locomotives; and that, as applicable to the defendants, the defendants during such time may not strike or otherwise withdraw from the service of the plaintiff on account of the labor dispute arising from the Section 6 notice of June 3, 1968.

9. The provisions of Section 8 of the Norris-LaGuardia Act (29 U.S.C. § 108) are applicable to the plaintiff, and the Court is prohibited from granting the plaintiff injunctive relief because the plaintiff has failed to comply with obligations imposed by the Railway Labor Act which is involved in the labor dispute in question.

## ORDER DISPOSING OF MOTION FOR PRELIMINARY INJUNCTION

The Court hereby orders, adjudges, and decrees:

1. That the plaintiff's motion for a preliminary injunction is hereby denied.

2. That the Court hereafter enter such further order or orders as may be appropriate.